UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**REMEDIA SOLUTIONS, LLC**
a Virginia limited liability company,

    **Plaintiff,**

v.   Civil Action No: 2:25-cv-250

**FREEWAY INTERNATIONAL LOGISTICS**
a Florida limited liability company,

    Serve:  Erik J. Sharpee
             605 E. Robinson Street, Ste. 420
             Orlando, FL 32819

**CAMERON KILPATRICK,**
an individual,   **TRIAL BY JURY DEMANDED**

    Serve:  Cameron Kilpatrick
             Freeway International Logistics
             6455 Shiloh Road, Suite C
             Alpharetta GA 30005

    **Defendants.**

---

**COMPLAINT**

COMES NOW, Plaintiff, Remedia Solutions, LLC., ("Plaintiff"), by and through its undersigned counsel, and moves this Honorable Court for judgment against Defendants, Freeway International Logistics, LLC ("Freeway International") and Cameron Kilpatrick ("Mr. Kilpatrick), collectively "the Defendants" on the grounds set forth herein:

    **I.**    **INTRODUCTON**

1.    This is an action for defamation and tortious interference with business expectancy arising out of the Defendants' false and defamatory posts about Plaintiff's trucking business on the

website Carrier411.com. Defendants posted a false and negative review of Plaintiff, commonly referred to in the industry as a "FreightGuard" arising out of the one load for which the Defendants' ordered an improperly sized truck to transport their load. Defendants falsely accused Plaintiff of engaging in "fraudulent activity" and "unethical or deceptive business practices." To the contrary, Plaintiff did not commit any fraud or engage in any deception. Plaintiff booked and supplied the truck requested by Defendant via the Rate Confirmation ("RC") and when notified, attempted to rectify the situation, but was instead confronted with hostile language and unwarranted threats to her business.

2.      Carrier411.com is used by freight brokers to vet potential carriers and FreightGuard Reports posted on the site typically result in the reported carrier being "blacklisted" and excluded from potential loads. This is exactly the result the Plaintiff has experienced. The Defendants' false and defamatory postings have not only caused Plaintiff to lose potential loads; they have also caused Plaintiff to lose existing and repeat customers; jeopardized access to long term contracts; and caused and continue to cause significant damage to Plaintiff's business reputation and business expectancies.

## II.     PARTIES

3.      Plaintiff is a Virginia limited liability company, having its principal place of business and registered office address is 9024 Shewsbury Drive, New Kent, Virginia 23124.

4.      Defendant Freeway International Logistics, LLC is a limited liability company formed under the laws of the State of Florida. Its registered agent is Erik J. Sharpee, 605 E. Robinson Street, Ste. 420, Orlando, FL 32819. Freeway International also has an office in Alpharetta, Georgia, the location associated with this complaint.

5.      Defendant Cameron Kilpatrick is an employee of Freeway International. Upon

information and belief, he works out of the office located in Alpharetta, Georgia.

### III. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as complete diversity exists. Plaintiff is a Virginia limited liability company and a citizen of the State of Virginia. Defendant Freeway International is a limited liability company and foreign corporation founded under the laws of the state of Florida and its registered agent is a citizen of Florida. Defendant Cameron Kilpatrick is a manager for Defendant Freeway International and upon information and belief, is a resident of the state of Georgia. The matter in controversy exceeds $75,000.00, exclusive of interest and costs.

7. This Court has in personam jurisdiction over Defendants in this action pursuant to Fed. R. Civ. P. 4(k)(1)(A) and under Va. Code § 8.01-328.1(A)(1), (2), and (3), in that Freeway International Logistics, LLC is a foreign limited liability company, founded under the rules and regulations of the state of Florida and transacts business in Virginia. Defendant Kilpatrick, upon information and belief, is a resident of the state of Georgia, is an employee of Freeway International, and made the false and defamatory statements at the core of this action in the course of his agency, acting as a transportation agent on behalf of Freeway International.

8. Venue is proper in the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1391(b)(2), and L. Civ. R. 3(B)(3) and (C), because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this judicial District and in this division.

### IV. STATEMENT OF FACTS

9. Plaintiff, Remedia Solutions is a freight shipping and trucking company based in New Kent, Virginia, that ships freight along the eastern coast of the United States.

10.      Freeway International is a freight broker that works as an intermediary between the shipper and freight service providers such as the Plaintiff.

11.      Freeway International holds itself out as a third-party logistics broker with over 25 years of industry experience.  https://www.freewaylogs.com/

12.      On or about April 2, 2025, Cameron Kilpatrick brokered a load for Chugach Technical located at 814 Greenbriar Circle, Chesapeake Virginia to be delivered by Plaintiff, Remedia Solutions, to Patuxent River Maryland, with a scheduled pickup at 7:30 a.m. EST on April 3, 2025.

13.      The Rate Confirmation attached hereto as EXHIBIT 1, requested a sixteen foot (16') straight truck.

14.      Upon Plaintiff's arrival at Chugach Technical to pick up the load in Chesapeake, Virginia, it was determined that the load would not fit the 16' straight truck requested in the RC by Freeway International.

15.      Upon information and belief, once apprised of the problem, the dispatcher contacted the third-party broker, Freeway International to advise of the problem.

16.      This contact prompted a call from Defendant Kilpatrick to Remedia Solutions whereupon Kilpatrick immediately began yelling belligerently at owner, Nicole Jones, advising that he had ordered a twenty-six foot (26') truck and that Remedia Solutions had sent the wrong truck to pick up the shipment.

17.      Despite Plaintiff's efforts to provide proof that Kilpatrick ordered a 16' truck on April 2, 2025 instead of a 26' truck, and attempts to advise Kilpatrick that Plaintiff could rectify the situation in approximately 30 minutes because she had a 26' truck in the area, Kilpatrick continued in his belligerence prompting Plaintiff to terminate the call.  Plaintiff then texted Kilpatrick and advised that she would speak to him when he was ready to have a civil conversation.

18. Instead of re-engaging in conversation, at 7:38 a.m., merely 8 minutes after the load was scheduled to be picked up, Mr. Kilpatrick's response to the text from Plaintiff was "Freight Guard coming your way."

19. Several text exchanges followed, the crux of which were to advise Kilpatrick that Freight Guard should not be used in the instance of a "mistake," but rather as it is intended, to deter fraudulent and unethical behavior by shippers who try to misuse or take advantage of the system. (See Exhibits 2, 3, and 4).

20. Despite such efforts, Kilpatrick posted a FreightGaurd against Remedia Solutions on Carrier411.com, on April 3, 2025 at 8:58 am EST, falsely stating that "he booked a 26' truck and that Plaintiff yelled at him and asked for more money to send the original truck that was booked." The FreightGuard also falsely asserted that Plaintiff engaged in fraudulent activity and unethical or deceptive business practices. (Exhibit 5).

21. The statements made by Kilpatrick are false. Plaintiff did not commit fraud, nor was Plaintiff engaged in unethical or deceptive business practices.

22. After the FreightGuard post is made, Carrier411.com generates a carrier response ticket and assigns a response number to the shipper. This is how the Plaintiff was formally notified that a FreightGuard had been posted.

23. Upon receipt of the FreightGuard notice, that same day, Plaintiff again continued to text Kilpatrick, advising that he had abused/misused FreightGuard and requesting him to remove the post or Plaintiff would pursue legal action. (Exhibit 6).

24. Upon information and belief, Carrier411.com has implemented a policy that all reviews posted to its website, to include FreightGuards, cannot be removed after 72 hours.

25. Kilpatrick was fully aware of the problems a FreightGuard would cause for the Plaintiff,

stating both to her and the dispatcher on separate occasions, "you know what a FreightGuard does to your business."

26. Despite specific requests asking Kilpatrick to remove the FreightGuard, Defendant has taken no action to remove the false and defamatory FreightGuard reports posted on behalf of Freeway International.

27. On multiple occasions, Plaintiff attempted to contact the owner of Freeway Internationsl to advise of Kilpatrick's behavior. Her attempts to address the issue with him went without a response. (Exhibit 7).

## Plaintiff Suffered and Continues to Suffer Lost Business Damages Due to the False and Defamatory FreightGuard Reports on Carrier411.com

28. Plaintiff incorporates all prior allegations in this paragraph as if fully set forth herein.

29. Carrier411.com is a website that allows freight brokers to submit FreightGuard Reports against truckers and trucking companies, alleging various unethical business practices, malfeasance, and fraud.

30. Freight brokers across the United States rely on Carrier411.com to screen potential carriers and determine whether to do business with a particular carrier.

31. Brokers frequently refuse to do business with or book loads with trucking companies and carriers who have FreightGuard Reports posted against them, regardless of whether the report is true or false.

32. Certain brokers automatically disqualify any carrier with a FreightGuard posted against them.

33. Carrier411.com does not independently confirm the truth of the broker's allegations nor does the site conduct any investigation into the matter before allowing a post on its website.

34. Carrier411.com does not allow a carrier or trucking company like Plaintiff to review brokers or request that a false review be taken down.

35. Carrier411.com only permits brokers to register for an account, log in, or otherwise access its database. The carrier/shipper's only option in using Carrier411.com is to log a one-time response to the complaint once notified that a complaint has been posted against them.

36. Only brokers that post or submit FreightGuard reports have the ability to remove the FreightGuard reports.

37. Through the date of this Complaint, Defendants have not removed the false and defamatory FreightGuard Reports.

38. Defendants continue to be responsible for their false and defamatory statements and the damages that they have caused and continue to cause.

39. Defendants knew their statements in the report to be false and defamatory and have been put on notice of this fact multiple times by Plaintiff.

40. Through the date of this Complaint, Plaintiff has lost over $250,000 in potential loads and expected business. A number of brokers have declined engaging with Plaintiff specifically citing the FreightGuards posted by Defendant Kilpatrick on behalf of Freeway International. (Exhibit 8).

41. Additionally, the FreightGuard report has damaged Plaintiff's business reputation, its business expectancies, its ability to secure freight hauling contracts, and resulted in other future damages that continue to accrue in an amount to be determined at trial.

### V.  CLAIMS

#### COUNT I:  Defamation – Libel Per Se

42. Plaintiff incorporates all prior statements and allegations as previously set forth herein.

43. Plaintiff, at all times prior to the posting of the FreightGuard Report, enjoyed a good business reputation in the shipping and trucking industry.

44. Defendant Kilpatrick, in his individual capacity and on the behalf of Freeway International, wrote and submitted an electronic FreightGuard Report on Carrier411.com making false statements about Plaintiff, specifically claiming fraud and unethical business practices, knowing the statements to be false or with reckless disregard for whether they were true or false.

44. The following statements were also false: "Booked carrier for 26ft box truck;" "Then yelled at me and asked for more money to send in the original truck that was booked."

45. The RC (Rate Confirmation) of April 2, 2025, specifically requests a 16' truck and when Plaintiff offered to correct the problem, she was confronted with belligerent language and threats. Plaintiff never asked for more money to correct the problem.

46. Defendant Kilpatrick published the FreightGuard Report on behalf of Defendant Freeway International.

47. Defendant Kilpatrick knew that the statements in the FreightGuard Report about Plaintiff were false at the time he published the FreightGuard on Carrier411.com.

48. Defendant Kilpatrick had no evidence to support the claim that Plaintiff engaged in any fraudulent or unethical or deceptive business activity.

49. Defendant Kilpatrick's statements were made with malicious intent, as he posted the FreightGuard Report on the same day within moments of his discussion with the Plaintiff about the wrong truck being present to take delivery of the shipment, threatened Plaintiff with the FreightGuard Report, and specifically stated to the dispatcher and Plaintiff "You know what a FreightGuard does to your business," before posting the FreightGuard, ignoring all efforts offered by the Plaintiff to resolve the problem.

50. Plaintiff repeatedly asked Defendant Kilpatrick to remove the false FreightGuard report after receiving notification that the report had posted. Despite such efforts, Kilpatrick never removed the report.

51. Additionally, Plaintiff attempted to reach the owner of Defendant Freeway International to discuss the issue and advise Freeway International of Defendant Kilpatrick's behavior and false allegations. Those efforts went without a response.

52. Defendant Kilpatrick's act of submitting the false and defamatory FreightGuard Report constitutes libel per se under Virginia law.

53. The false and defamatory FreightGuard Report has caused numerous freight brokers to stop doing business with Plaintiff, decline loads, and otherwise redirect their business to other carriers, specifically citing the FreightGuard Report as the reason for the refusal to broker loads with the Plaintiff.

54. Defendant Freeway International is liable for the false and defamatory statements of its employee Kilpatrick because Defendant Kilpatrick posted the FreightGuard Report during the course of his employment and agency with Freeway International, listing Freeway International on the FreightGuard Report.

55. In addition to damages from lost loads and business, unless and until Defendants' actions are enjoined, Plaintiff will continue to suffer actual damages from lost loads and declined business revenue, as well as irreparable harm to its professional reputation.

### COUNT II: Tortious Interference with Business Expectancy

56. Plaintiff incorporates all prior allegations in this paragraph as if fully set forth herein.

57. Plaintiff operates a trucking company that obtains work and books loads from brokers who often choose or reject trucking companies based upon information found on the Carrier411.com

website, where brokers may submit FreightGuard Reports that function as reviews of trucking companies like Plaintiff's.

58. Plaintiff has a reasonable expectation of booking loads with existing and prospective customers, as it has done without issue in the past.

59. Defendants knew about Plaintiff's business expectations, yet Defendant Kilpatrick posted the false and defamatory FreightGuard Report on behalf of Defendant Freeway International to induce Plaintiff's prospective customers not to enter contracts with Plaintiff by defaming its business reputation and falsely accusing Plaintiff of illegal and unethical conduct.

60. Defendants have made no effort to remove the false and defamatory FreightGuard reports despite receiving multiple requests from Plaintiff following their posting to remove the reports from Carrier411.com's website.

61. The FreightGuard Report and the false and defamatory statements therein were intended to harm Plaintiff's current and prospective economic relations, business, and contracts with its clients.

62. The FreightGuard Report has had its intended damaging effect. Brokers and companies that Plaintiff worked with in the past and from whom Plaintiff expected additional business have refused to do business with Plaintiff.

63. There is no justification for the Defendants' malicious and willful interference with Plaintiff's prospective business relations.

64. The prospective contracts for loads with the brokers that declined business with the Plaintiff were worth over $250,000.00 and would have been beneficial to Plaintiff but for the Defendants' unjustified and wrongful interference.

65. Additionally, and due to the Defendants' aforesaid interference with Plaintiff's customers,

certain brokers that have done repeat business with Plaintiff in the past are no longer doing business with Plaintiff at all.

66. The damages from lost prospective business opportunities continue to accrue through the date of this Complaint and the full measure of damages will be determined by the date of trial.

### COUNT III. Respondeat Superior- Defendant Freeway International

67. Plaintiff incorporates all prior allegations in this paragraph as if fully set forth herein.

68. Defendant Kilpatrick was at all relevant times an agent of Defendant Freeway International.

69. Defendant Kilpatrick engaged Plaintiff's services as a carrier on behalf of Defendant Freeway International.

70. Defendant Kilpatrick posted the FreightGuard Report against Plaintiff on behalf of Defendant Freeway International, stating in the Reports that the report was submitted by "Cameron Kilpatrick, Freeway International Logistics, LLC.

71. Defendant Freeway International's owner, Erik Sharpee was aware of the FreightGuard Report posted by Kilpatrick but failed to respond to numerous attempts by the Plaintiff to contact him directly.

72. Despite having notice, Freeway International's owner, Erik Sharpee did not take any action to direct Defendant Kilpatrick to remove the FreightGuard Report, nor did Erik Sharpee take any action to address the false and defamatory statements made by Defendant Kilpatrick on behalf of Defendant Freeway International.

73. Plaintiff suffered extensive lost load and business reputation damages due to the actions of Defendant Kilpatrick in his role as manager for Freeway International.

## COUNT IV: Injunctive Relief

74. Plaintiff incorporates all prior allegations in this paragraph as if fully set forth herein.

75. As a direct and proximate cause of Defendants' ongoing wrongful acts, Plaintiff suffered and will continue to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill.

76. Plaintiff has no adequate remedy at law to compensate it for the continuing injuries inflicted by Defendants and such reputational and business injuries will continue unless and until enjoined by this Court.

77. Defendants will not suffer any injury if they are enjoined from posting and maintaining false and defamatory statements against Plaintiff.

78. The public interest favors enjoining the Defendants from publishing and maintaining false statements about Plaintiff's business that tend to mislead other brokers and damage Plaintiff's business prospects and reputation.

## VI. DAMAGES

79. Plaintiff incorporates all prior allegations in this paragraph as if fully set forth herein.

80. Plaintiff seeks compensatory damages in the amount of $250,000.00 or greater as supported by the evidence presented at trial, on each count presented in this Complaint.

81. In addition to compensatory damages, the aforementioned acts of Defendants were willful, wanton, malicious, and intentional, and justify an award of punitive damages to Plaintiff in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1.l.  Such an award is sought to punish Defendants and deter them and others similarly situated from engaging in such misconduct in the future.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

A. Enter judgment on her behalf against Defendants, jointly and severally, as applicable;

B. Award Plaintiff compensatory damages in amount greater than $250,000.00 against Defendants, jointly and severally, as applicable, with a specific amount to be determined at the date of trial given the ongoing damages suffered;

C. Award Plaintiff punitive damages due to Defendants' willful and wanton conduct in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1;

D. Award pre- and post-judgment interest at a rate of six percent (6%) pursuant to Va. Code §6.2-302;

F. Enjoin Defendants, require them to remove the false and defamatory postings, and permanently enjoin them from publishing false and defamatory statements against Plaintiff; and

G. Grant such other relief as this Court may consider just and proper.

## DEMAND FOR JURY TRIAL

In accordance with F.R.C.P. 38(b), Plaintiff demands a trial by jury of the within action, including the complaint, and any further pleadings.

                **REMEDIA SOLUTIONS, LLC**
                a Virginia limited liability company

                /s/
                Thomas L. Johnson, Jr., VSB# 38814
                johnson@bajinjurylaw.com
                Bricker Anderson & Johnson, PC
                411 East Franklin Street, Suite 504
                Richmond, VA  23219
                (804) 649-2304
                (804) 649-3380 Fax